## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
## CASE NO. 7:21-CV-00025-D

DANIEL McCARTHY and PHILIP SCALZO,

       Plaintiffs,

v.

ACTIVE ENERGY GROUP, PLC, LUMBERTON ENERGY HOLDINGS, LLC, ADVANCED BIOMASS SOLUTIONS, PLC, and ACTIVE ENERGY RENEWABLE POWER, LLC,

       Defendants.

**DEFENDANTS AEG AND ABS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

---

## I. PLAINTIFFS' EMPLOYMENT CONTRACTS ARE NOT SUBJECT TO THE PROVISIONS OF UTAH'S PAYMENT OF WAGES ACT, UTAH CODE §34-28.1, *et. seq.*

Plaintiffs admit that each had Employment Contracts that called for the payment of monthly compensation between $12,000.00 and $15,000.00 per month and the payment of "all business-related expenses incurred in addition to various customary benefits such as health insurance" and that AEG breached those Employment Agreements. (Doc. 1, ¶¶ 19, 25). Beginning in June 2018, Plaintiffs allege they were informed that there were "cash-flow" problems and that AEG "had to delay payroll until AEG raised additional funds", but Plaintiffs allege that employees were assured they would be "eventually paid", although neither Plaintiff alleges any specific date that they were told that would be done. Other than this alleged "assurance" in June 2018,

Plaintiffs allege no other representations that were made to them about when or if they would be paid. (*Id.*, ¶ 30). Despite "wages and reimbursement" being "delayed", Plaintiffs allege that they "traveled across the world on behalf of, at the direction of, and for the benefit of AEG….", during which they "conducted business negotiations, produced a conceptual design of a CoalSwitch plant that was to be installed at an existing palm oil mill in Jerantut Malaysia including the completion of preliminary engineering and a financial feasibility study." (*Id.*, ¶ 33). Eight (8) months from the time that Plaintiffs allege that "payroll" had been "delayed", Plaintiffs allege that in February 2019, their employment was terminated. Both Plaintiffs allege. that in February 2019, AEG "acknowledged" that there were sums owed to the Plaintiffs, but allege that "at no time were these concededly owed wages and expenses paid *or tendered*" to them, nor do they allege that anyone told them that any sums owed since June 2018 would be paid. (*Id.*, ¶¶ 34-35). Plaintiffs contend that between "June 2018 and the dates of their termination, Plaintiffs were not *regularly* paid their salary for duties performed, nor were they reimbursed for business expenses incurred on behalf of AEG…." (*Id.*, ¶ 39). Plaintiffs allege that they made a "formal written demand for payment of all unpaid wages and business-related expenses" on May 12, 2019. (*Id.*, ¶ 44).

While Plaintiffs point to the absence of a definition under the Utah Payment of Wages Act ("UPWA") or any case law construing the same as to what constitutes "different terms of payment", that does not translate a claim for breach of Plaintiffs' Employment Contracts into a claim under the UPWA. (*Id.*, pp 6,9; ¶¶ 19, 25, 26, 58).

The UPWA applies only where employment contracts are "silent" on the "subject matter" of the payment of wages and is expressly inapplicable to "employment where an agreement exists between employer and employee providing for different terms of payment…." Utah Code § 34-28-1; *Action Elec. Co. v. Indus. Comm'n of Utah*, 636 P.2d 474, 475 (Utah 1981).

Plaintiffs seek recovery of business expenses, and the UPWA deals only with the payment of "wages." (Doc. 1, ¶¶ 34-35); Utah Code § 34-28-2(1)(i)); *Holley v. Sullivan*, 28 Utah 2d 3, 6, 497 P.2d 630, 632 (1972) (UPWA "does not relate to breaches of contract other than as they have reference to wages for work."). Plaintiffs' Employment Contracts were not silent on the subject matter of the payment of wages, nor silent on when the amount of their monthly compensation, reimbursement of expenses and payment of health insurance was paid. On the other hand, the UPWA provides for payment of "wages earned by an employee at regular intervals, but in periods no longer than semimonthly." Utah Code Ann. § 34-28-3(1)(a) and (d). Plaintiffs allege the existence of agreements with different "terms of payment" than the provisions of the UPWA.

Plaintiffs contend that the Utah Supreme Court in *Zoll & Branch, PC v. Asay*, 932 P.2d 592 (Utah 1997) "expressly disavowed" the "language of *Action Elec. Co.*…on which AEG depends." (Doc. 23, p 10). Of course, the Utah Supreme Court did not and could not "expressly disavow" the plain language and exceptions contained within Utah Code § 34-28-1. There, the Utah Supreme Court was faced with whether an employee who leaves employment *voluntarily* is eligible to sue under the penalty provision of the

UPWA. The Court noted that *Action Elec. Co.* "dealt with a prevailing wage rate dispute", and that the Utah Supreme Court's "cursory mention of the penalty for *both voluntary and involuntary severance*....is not binding on our ruling in this case." *Zoll & Branch*, 932 P.2d at 594. The Utah Supreme Court did not "disavow" the Court's holding in *Action Elec. Co.* that the UPWA is "apparently aimed at helping those whose employment contracts are silent on its subject matter", nor reject the exception contained within Utah Code §34-28-1. At least one trial court in Utah, citing *Action Elec. Co.*, held that Utah Code § 34-28-1 (a "broad exclusion"), "clearly states *none* of the provisions of the Payment of Wages Act apply to parties who have existing compensation agreements" and that accordingly, the UPWA "do not apply to employers and employees who have agreements in place for the payment of wages. To those who do not, the Payment of Wages Act serves as a 'default' wage agreement." *See Dykee v. Liberty Press LLC*, No. 100107272, 2013 WL 5288462, at *8 (Utah Dist.Ct. Aug. 12, 2013) (attached). Here, Plaintiffs have expressly alleged the existence of such Employment Agreements and their breach of contract claims seek to recover the amounts that Plaintiffs contend are due under those agreements, including the reimbursement of business expenses.

While Plaintiffs contend that no "term of payment" exists "relating to the payment of wages upon separation to be sure", if the Plaintiffs Employment Agreements are excepted from the provisions of the Act prior to their separation, there is no support for the notion that these Employment Agreements therefore become subject to the Act upon Plaintiffs' separation from employment. Plaintiffs have exercised the remedy that

the law provides them in the form of their breach of contract claims to recover the alleged compensation and business expenses due them under their Employment Contracts and/or independent contractor agreements both prior to and "upon separation." Plaintiffs' employment agreements are expressly excepted from the provisions of the UPWA and Plaintiffs cannot use the UPWA to litigate a breach of contract case. Plaintiff's Third Claim for Relief should be dismissed.

## II. PLAINTIFFS' EMPLOYMENT IS NOT SUBJECT TO THE PROVISIONS OF THE FAIR LABOR STANDARDS ACT AND THEREFORE, THE UTAH MINIMUM WAGE ACT, UTAH CODE §34-40-101, *et. seq.* THAT IS OTHERWISE BARRED

### A. Plaintiffs admit that they meet the "duties test" in their Complaint

Plaintiffs, "highly-integrated" employees of AEG, a "producer of biomass…" provide great detail about their advanced educational and professional backgrounds and the work that they performed using those backgrounds. (Doc. 1, ¶¶ 8-10, 18-20, 24-26, 33). Those admissions make clear that Plaintiffs were employed in a "bona-fide executive, administrative or professional capacity" and therefore exempt from the FLSA. 29 U.S.C. § 213(a)(1). While Plaintiffs contend that the issue regarding whether the Plaintiffs satisfy the "duties test" under the FLSA is a "fact-specific" inquiry, unlike any case cited by the Plaintiffs, given Plaintiffs' admissions, no further "fact-specific inquiry" about the nature of Plaintiffs' duties is necessary, unless Plaintiffs admissions are ignored. Scalzo alleges that he was on "AEG's chief-level executive management team", was responsible "for the development and management of AEG's Utah operation", served on AEG's "Operating Committee", responsible for "establishing the firm's work plans, schedules budgets and for prioritizing the firms' activities. McCarthy

alleges that he was AEG's "Vice President of Engineering", produced "mechanical engineering designs of machines and equipment", and produced "2-D and 3-D.....models to support AEG's development activities, and actively participated in the overall development of the CoalSwitch process...." (*Id.*, ¶¶ 20, 26). Plaintiffs allege they "conducted business negotiations" and produced "a conceptual design of a CoalSwitch plant." (*Id.*, ¶33). Plaintiffs thus admit that their duties were "bona-fide executive, administrative or professional" in nature.

None of the cases cited by Plaintiffs contain these types of judicial admissions. (Doc. 23, pp 12-14). Plaintiffs do not allege in their Complaint that their advanced educational and professional backgrounds were not necessary to their duties, or they most certainly would not have touted them. Plaintiffs simply make conclusory allegations that between "June 2018 and February 2019, AEG.... willfully failed to compensate Plaintiffs minimum wages...", nothing more than a "formulaic recitation of the elements" of an FLSA claim. (*Id.*, ¶87). However, given Plaintiffs' admissions they have alleged show no entitlement to relief under the FLSA, and that claim must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plaintiffs' Complaint must contain more than "labels" and "conclusions". *Id.*

Accepting the allegations in Plaintiffs' Complaint as true, there are no facts in dispute for purposes of this Motion and Plaintiffs' employment meets the "duties test." Given these admissions, the question whether particular activities exclude employment from the overtime benefits of the FLSA is a question of law. *Reich v. State of Wyo.*, 993

F.2d 739, 741 (10th Cir. 1993); *Emmons v. City of Chesapeake*, 982 F.3d 245, 250 (4th Cir. 2020). Plaintiffs are bound by the factual admission and assertions contained within their pleadings. *Lucas v. Burnley*, 879 F.2d 1240, 1242 (4th Cir. 1989). Plaintiffs admit that: (1) their primary duties included "the performance of work….requiring knowledge of an advanced type in a field of science or learning customarily acquitted by a prolonged course of specialized intellectual instruction;" 29 C.F.R. § 541.300; 541.301(a); 29 C.F.R. § 541.700(a); (2) that they performed work "requiring the consistent exercise of discretion and judgment. and used their "advanced knowledge" to analyze, interpret or make deductions from varying facts or circumstances; 29 C.F.R. § 541.301(b); and (3) their "specialized academic training" and/or possession of the "appropriate academic degree" to assist AEG in the production of biofuels, the "best prima facie evidence" that Plaintiffs meet the requirements for the application of this exception. 29 C.F.R. § 541.301(d). Plaintiffs are bound by their judicial admissions and their employment meets the "duties test."

### B. Plaintiffs admit that they meet the "salary test"

Plaintiffs admit that they were employed at a salary of more than $684.00 per week, in amounts ranging from $12,000.00 to $15,000.00 per month. Both Plaintiffs seek recovery of "wages" and expenses for the period commencing in June 2018, and allege that between "June 2018 and the dates of their termination, Plaintiffs were not *regularly* paid their salary for duties performed…." (Doc. 1, ¶ 39). Thus, Plaintiffs seeks to transform their exempt status into a non-exempt status for the periods that they were not paid. While Plaintiffs point to a "2004 clarification" the Department of

Labor (Doc. 23, pp 15-16) and the 6th Circuit's take on that 2004 clarification (*Orton v. Johnny's Lunch Franchise, LLC*, 668 F.2d 843 (6th Cir. 2012), other Circuits have clearly rejected the notion that an employee who is generally exempted from the provisions of the FLSA can be considered non-exempt during any period of time they were not paid. *See e.g. Pioch v. IBEX Eng'g Servs., Inc.*, 825 F.3d 1264 (11th Cir. 2016). "The FLSA, after all, is not a vehicle for litigating breach of contract disputes between employers and employees." *Id.* at 1271 (citing *Donovan v. Agnew*, 712 F.2d 1509, 1517 (1st Cir. 1983) (finding no "basis for holding that Congress intended to extend the minimum wage protections of the Act to highly salaried employees whenever their employment contracts are breached)); *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 705 (10th Cir. 2014) ("The FLSA is not an all-purpose vehicle to resolve wage disputes between employers and their employees."); *Coffen v. Washington Convention & Sports Auth.*, 271 F. Supp.3d 211, 214 (D.D.C. 2017). The 11th Circuit in *Pioch rejected* the notion that *Orton* (and therefore, any "2004 clarification from the Department of Labor") "completely undermines our analysis of the FLSA" pronounced by them in *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361 (11th Cir. 1997). "We continue to believe that "[t]o read the FLSA blindly, without appreciation for the social goals Congress sought, would do violence to the FLSA's spirit." *Id.* 29 U.S.C.A. § 202.

As in *Pioch*, another way of thinking about Plaintiffs' contention is to "follow the lead of *Orton*" and look only to what the Plaintiffs allege they were paid. During their employment, Plaintiffs allege that, prior to June 2018, they were "regularly paid"

approximately five (5) times the "minimum" of $684.00 per week for "executive", "administrative" and/or "professional" employees. 29 C.F.R. §§ 541.100, 541.200, 541.300. With Plaintiffs alleging that their employment started in February 2017, between that date and June 2018, McCarthy was paid approximately $192,000.00 and Scalzo was paid approximately $240,000,00 in salary. Even without receiving the compensation that they claim is still due them under the Employment Contracts, the Plaintiffs' earnings "are well above the benchmark salaries contemplated for…. salaried….employees under the FLSA. *Pioch* at 1272. Plaintiffs are not the "type of employee that the FLSA's wage requirements were designed to protect." *Id.*; *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 132 S. Ct. 2156, 2173, 183 L. Ed. 2d 153 (2012) (exemptions within § 213(a)(1) "premised on the belief that exempt employees 'typically earned salaries well above the minimum wage' and enjoyed other benefits that 'set them apart from the nonexempt workers entitled to overtime pay."). Plaintiffs were "highly-paid" and "highly integrated" executives/professionals, earning well in excess of $684 per week. The FLSA is not a vehicle for litigating Plaintiffs' breach of contract dispute, and their Fifth Claim for Relief must be dismissed. What Plaintiffs are "essentially trying to do is assert a state-law breach of contract claim…through the FLSA." *Pioch*, 825 F.3d at 1272.

### C. Plaintiffs' claims under Utah's Minimum Wage Act are barred

Plaintiffs' claims under the Utah Minimum Wage Act must be "brought within two years of the alleged violation." Utah Code Ann. § 34-40-205. Plaintiffs allege but a single occasion in June 2018 when they were last paid when employees were

"assured…that they would be eventually paid…." (Doc. 1, ¶ 30). Plaintiffs allege that they were "instructed" to continue to work, but do not allege that they continued to work until February 2019, or delayed filing any action in reliance upon any "assurances" given in June 2018. Defendants concede there are facts that may justify the application of the doctrine of Equitable Estoppel and/or tolling, but Plaintiffs have not plead any facts that support the application of either doctrine. Equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action, but the defendant's conduct caused him to delay bringing suit. *Fitzgerald v. Spearhead Invs., LLC*, 2021 UT 34, ¶ 16, ___ P.3d ____ (2021). Equitable tolling is invoked only in cases where plaintiff is ignorant of his cause of action because of defendant's fraudulent concealment. *Id.* ¶ 19; *Beaver Cty. v. Prop. Tax Div. of Utah State Tax Comm'n*, 2006 UT 6, ¶ 29, 128 P.3d 1187, 1193 (2006). Equitable estoppel must be specially plead. *Collett v. Goodrich*, 119 Utah 662, 668-669, 231 P.2d 730, 733 (1951). "The object of the declaration is to give the defendant fair notice of the case he is called into court to meet." *Id.* Plaintiffs have made no allegations that would support conduct by these Defendants in which representations in June 2018, caused Plaintiffs to delay bringing suit until February 2021. Plaintiffs have no claim under Utah's Minimum Wage Act for any period more than two (2) years prior to the date they filed this action.

Respectfully submitted this the 30th day of August, 2021.

**SHIPMAN & WRIGHT, LLP**
*Attorney for Defendants*

By:    /s/ Gary K. Shipman                    
**GARY K. SHIPMAN**
N.C. State Bar No.: 9464
575 Military Cutoff Road, Suite 106
Wilmington, NC  28405
Tel.: (910) 762-1990
Fax: (910) 762-6752
Email: gshipman@shipmanlaw.com

## CERTIFICATE OF COMPLIANCE

I, the undersigned, hereby certifies, pursuant to Local Civil Rule 7.2, that this Reply Memorandum (consisting of 2,598 words) complies with the applicable word limit, exclusive of the case caption, any required certificates exhibits and other addenda to this Memorandum.

This the 30th day of August, 2021.

By:    /s/Gary K. Shipman        
Gary K. Shipman

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this the 30th day of August, 2021, I electronically filed the foregoing **REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of the same to the following CM/ECF participants as follows:

Brycen G. Williams
WILLIAMS & RAY, PLLC
555 Fayetteville Street, Suite 201
Raleigh, NC 27601
Email: bw@williamsray.com
*Counsel for Plaintiffs*

This the 30th day of August, 2021.

**SHIPMAN & WRIGHT, LLP**
*Attorneys for Defendants*

By:   /s/ Gary K. Shipman
Gary K. Shipman
N.C. State Bar No.: 9464
575 Military Cutoff Road, Suite 106
Wilmington, NC  28405
Tel.: (910) 762-1990
Fax: (910) 762-6752
Email: gshipman@shipmanlaw.com